## HUBER MANUFACTURING COMPANY, Appellant, v. L. M. HUNTER, et al., Respondents.

### St. Louis Court of Appeals, February 17, 1903.

1. **Contract of Sale: EVIDENCE.** Evidence examined, and *held* to support a finding that a written contract for the purchase of an engine did not embody the entire agreement of the parties as to the kind of engine to be sold.

2. ——: ——: **PRACTICE, TRIAL.** Where on a prior appeal, the issue whether or not a written order embodied the entire agreement of the parties as to the kind of engine to be sold was referred back for trial, it would have been improper for the court to have given a peremptory instruction based on the theory that parol evidence was inadmissible to show conditions not included in the written order, and the issue was properly submitted to the jury.

3. **Sale: FRAUD: REMEDY.** If the entire agreement for the sale of an engine contemplated the delivery of a new engine, and by fraud on the seller's part an old one instead was imposed on the buyer, the latter could recover for the fraud in diminution of the seller's demand for the price, though he had not given notice of the defects within a reasonable time, or returned the property.

4. ——: ——: ——: **ISSUE: TESTIMONY: PRACTICE, TRIAL.** On an issue as to whether a machine was of a certain kind or not when bought, where the facts testified to by experts concerned the condition of the machine in particulars which tended to show its permanent construction at that time, the fact that their examination was made a long time thereafter did not necessarily weaken or disqualify their testimony, and it was properly admitted.

Appeal from Knox Circuit Court.—*Hon. Edwin R. McKee*, Judge.

AFFIRMED.

*J. W. Ennis* and *L. F. Cottey*, for appellant.

(1)    Our first contention is that the written contract embodied the entire agreement of the parties as to the kind of engine to be sold, and the trial court erred in permitting defendant Hunter to give oral testimony varying the terms of the written agreement to purchase the engine in question.    The writing embraced the entire contract upon which the minds of the parties met, and parol evidence was not permissible to control or to enlarge its terms.    Pearson v. Carson, 69 Mo. 550; Morgan v. Porter, 103 Mo. 135; Hair Co. v. Walmsley. 32 Mo. App. 115; Wood v. Murphy, 47 Mo. App. 539; Loan Co. v. Workman, 71 Mo. App. 275; Fruin v. Railway, 89 Mo. 397; Yeoman v. Hoshaw, 98 Mo. 360; Squier v. Evans, 127 Mo. 518.    (2)    It is a general and well-established rule that parol evidence of a prior or contemporaneous agreement can not be received to vary, add to, or take from an original contract in writing. Newman v. Bank, 70 Mo. App. 141; Kingman v. Schulenberger, 64 Mo. App. 557; State ex rel. v. Jones, 131 Mo. 205; Miller v. E. L. & P. Co., 133 Mo. 220; Tracy v. The Union Iron Works, 104 Mo. 198.    (3)    There was no ambiguity in the contract in question, and for that reason it was not the subject of oral explanation. Dearmin v. Schnell, 71 Mo. App. 503; Halliday & Co., v. Lesh, 85 Mo. App. 285.    The contract in question is as free from ambiguity as either of the contracts discussed in the two cases last above cited.    (4)    The oral evidence of Hunter was improper, because it was the province of the court and not the jury to interpret the written contract.    Chapman v. Railway, 114 Mo. 542; Ford v. Dyer, 148 Mo. 541.    (5)    No principle of law is better settled in respect to such conditions in these machine contracts than that they are conditions precedent, to be observed and performed.    Nichols v. Larkin, 79 Mo. 264; Deere, Mansur & Co. v. Hucht, 27 Mo. App. 1; Boyer v. Neel, 50 Mo. App. 26; Wood Machine Co. v. Bobbst, 56 Mo. App. 427; Kingsland and Doug-

lass Mfg. Co. v. Board Bros., 60 Mo. App. 662; Kingman & Co. v. Schulenberger, 64 Mo. App. 548. (6) The contract having been introduced in evidence by defendant Hunter, he thereby vouched for it, and must be held bound by its stipulations, including the warranty clause. The courts must allow parties to make their own contracts, and can enforce only such as are actually made. Blaine v. Knapp & Co., 140 Mo. 251; Bank v. Farris, 77 Mo. App. 186. (7) Plaintiff's objections to the hypothetical questions asked the witnesses Winn and Horn, should have been sustained for the reasons given. Graney v. Railway, 157 Mo. 683. "An expert can not be allowed by answer to an improper question to usurp the province and functions of the triers of the facts." State v. Palmer, 161 Mo. 173.

*O. D. Jones* for respondents.

(1) The sale of the old engine is the one implied, by law, to pay what it was reasonably worth or return it. There is no ground in the pleadings for appellants contention for that theory. It sues on note and to foreclose mortgage on land—it replies to sustain the same suit and grounds. If there were to be rescission on its demand it certainly would have to also do something; return the money, notes and J. I. Case engine, the pleadings and evidence show it received. This contention is like its others, untenable. Jarret v. Morton, 44 Mo. 275; Parker v. Marquies, 64 Mo. 38; Nauman v. Oberly, 90 Mo. 670. (2) The verdict of the jury is sustained by the evidence. The former reversals were not on that ground; in fact it was in effect overruled by remanding the case for trial on the same evidence in this record. May v. Crawford, 150 Mo. 504. The same objection was urged on both former appeals on the same evidence and both were overruled and cause remanded for new trial on same evidence; and on same evidence these rulings are *res adjudicata.*

BARCLAY, J.—This is an action to recover the
amount of a promissory note for $825, executed to the
plaintiff by defendant in part payment of the purchase
price of a traction engine sold by the plaintiff to de-
fendant in August, 1896, and to foreclose a mortgage
given to secure the note.   The defense is that there was
fraud in the sale on the part of plaintiff whereby an
old, rebuilt engine was foisted on the defendant in lieu
of a new one of the pattern of 1896 which defendant
verbally expressed the wish to buy and plaintiff's agent
agreed he should have in execution of the order given;
that the fraud was not discovered by defendant until
some months after the receipt of the engine and that
the latter was not worth the amount which defendant
had paid on account of the debt, etc.   To that defense
plaintiff made several replies, the substance of which
is that the engine was sold upon an express written war-
ranty which plaintiff fully kept; that defendant had
not complied with the conditions of said warranty by
which he was bound; and that he accepted, used and
made payments upon the note in suit for the engine long
after he had full notice of the alleged defects in its
quality; and that defendant waived any right to com-
plain thereof by his conduct after the sale.

The cause was tried with the aid of a jury and
resulted in a verdict for defendant from which plaintiff
appealed in the usual manner.   Those features of the
trial which require notice will be mentioned along with
our comment thereon.

1.   The cause has been in this court by appeal on
several occasions already.   Huber Mfg. Co. v. Hunter,
78 Mo. App. (St. L.) 82, and 87 Mo. App. (St. L.) 50.
The general outlines of the controversy are shown in
the opinions reported as aforesaid.   After the latter
reversal the cause came again to trial with two new
issues presented, namely, the one which had been ten-
dered by the new matter in the reply, and which this

court held to tender a proper issue after the trial court had stricken it out; and the other, the plea of waiver and estoppel founded on defendant's alleged acquiescence after knowledge of the inferior quality of the engine.

After these issues were contributed to the legal materials of the litigation, the trial court endeavored to follow the directions which accompanied the judgment of remand. They were quite specific and may well be quoted here.

The majority of the court said:

"The only issues which should be submitted to the jury on the next trial are: first, whether or not the contract embodied the entire agreement of the parties as to the *kind* of engine to be sold? If it did, plaintiff is entitled to judgment; second, if the contract was not completely expressed in writing, did plaintiff practice fraud on defendant by palming off on him a different engine from the one intended to be sold by the terms of the complete contract? If so, defendant is only liable for the reasonable value of the thing purchased, but if he had paid more than that, he could not recover such overpayment since it was voluntarily made. The judgment is reversed and the cause remanded to be tried in conformity with this opinion."

At the last trial the note and mortgage were admitted, and defendant took the affirmative. The gist of his testimony was that he was a dealer in general merchandise, engines and threshers at the town of Novelty, Missouri, and, having a Case engine which he wanted to trade for a new 16-horsepower one, he telegraphed his wish to plaintiff, a manufacturing company at Marion, Ohio. Plaintiff then sent an agent to see defendant. The agent exhibited to defendant a catalogue of plaintiff for 1896, showing plaintiff's engines offered for sale. Defendant selected one at the net price of $975, and, owing to a minor agreement for exchange and option of repurchase of the other engine, the note

was agreed to be $1,025. According to defendant's testimony the engine pointed out by the agent as the one which would be furnished was a new one of the kind indicated in the plaintiff's catalogue of the current year 1896, which catalogue defendant produced at the trial. When the terms were settled verbally and the engine definitely indicated, defendant executed the written order already referred to. Defendant's evidence tended to support his contention that the engine actually furnished by plaintiff was a secondhand one, so ingeniously put together and constructed as to be distinguishable as such only by experts, in consequence of which defendant did not discover its real character until long after he had received the machine and had had it in use. Defendant made payments on account of his note, $40, on the day of its date, August 8, 1896; $200 on December 29, 1896; $140.25 on February 24, 1897, and $75 on April 16, 1897. Defendant admitted having given the written memorandum (referred to as a contract in the opinion of the court reported, 87 Mo. App. 50). It was in the form of an order by defendant to plaintiff for "one 16-horse-power Huber traction engine," in consideration of which defendant proposed to deliver an older (Case) engine, and to execute the note and mortgage on which this action is based. The written order further recited that "the machinery furnished under the above order shall be made of good material, well constructed, and with proper use and management, capable of doing well the work for which the machines, respectively, are made and sold. If inside of six days from the date of its first use it shall fail in any respect to fill this warranty, written notice shall be given immediately by the purchaser to the Huber Manufacturing Company, at its home office, Marion, Ohio, by registered letter and written notice also to the local agent through whom the same was received, stating particularly what parts and wherein it fails to fill the warranty, and a reasonable time allowed the

company to get to the machine with skilled workmen and remedy the defects, if any there may be; if it be of such a nature that a remedy can not be suggested by letter, the purchaser to render all necessary and friendly assistance and co-operation in making the machinery a practical success and providing opportunity for a fair test or trial of machine by company's experts.''

Further along in the order it is written that all the agreements appertaining to the order are included therein, that no verbal promises or agreements in addition are valid, that no agent has authority to make any different warranty, or to modify any of the written terms, or to waive any of the expressed conditions, etc.

The plaintiff accepted the order by sending the engine which constitutes the bone of contention now.

The plaintiff's testimony tended to show that the written order was the complete agreement of the parties, and that defendant had given no notice of complaint for some months after full knowledge of the alleged imperfections of the engine. It is not necessary to give a full outline of the evidence. It will suffice to say that there was testimony to support the contentions of each of the parties.

The learned trial judge refused to give a peremptory instruction for the plaintiff which was founded on the theory that the defendant was precluded by his written memorandum of August 1, 1896, from showing by oral testimony that some of the essential terms of sale were not included therein, namely, the representation in the nature of a warranty that the engine was to be new. But that ruling was obviously based on the directions for trial accompanying the order of remand in 87 Mo. App. (St. L.) 62.

Under the most recent adjudications in the Supreme Court on the subject, those directions constitute the law of the particular case in the event of a new trial. It has been held to be manifestly improper for the trial court to depart from the directions of the ap-

pellate court where the facts disclosed at the last trial do not substantially change the case which was under review when the directions were given. Bealey v. Smith, 158 Mo. 515; Brummell v. Harris, 162 Mo. 397.

The written order of defendant was before this court on the appeal reported, 87 Mo. App. (St. L.) 50. The issue whether or not it "embodied the entire agreement of the parties as to the *kind* of engine to be sold" was referred back for trial, as stated in the report of that appeal. That issue as to the real agreement of sale between these parties was a proper one to be submitted for a finding. It was submitted and the finding was for defendant. There was testimony to support that result by a proper application of the principles announced by this court in the last previous appeal in the cause.

2. In submitting the aforesaid issue to the jury the learned trial judge gave the following instruction at the instance of the plaintiff:

"3. The court instructs the jury that if they shall believe from the evidence that the written contract read in evidence for the purchase of said engine, embodied the entire agreement between the plaintiff's agent and the defendant, Hunter, as to the kind of engine to be sold, then your verdict must be for plaintiff."

On the issue of fraud raised upon the answer of defendant the learned circuit judge gave the following instructions for plaintiff:

"4. The court instructs the jury, that the defendant, Hunter, alleges in his answer that he was misled and deceived by false and fraudulent representations made by the agent of plaintiff in the sale and delivery of the engine in question. Unless the defendant shall show by a preponderance of the evidence, and to the reasonable satisfaction of the jury, that the agent of plaintiff in making said sale and delivery, and for the purpose of inducing the defendant, Hunter, to purchase or receive said engine, did make the false and fraudu-

lent representations set forth in defendant's answer,. your verdict should be for the plaintiff.

"5. The court instructs the jury that if they shall believe from all the evidence in the case, that the transactions between the plaintiff's agent, Elliott, and the defendant, Hunter, in regard to the sale and delivery of the engine in question were as consistent with honesty and fair dealing as with dishonesty or fraud, then they shall find the same to be honest, and return a verdict for plaintiff."

The instruction given by the court at the instance of defendant was as follows:

"1. The court instructs you, on behalf of defendant, that if you find from the greater weight of the evidence, that the written order, for the engine, in evidence does not embody the entire agreement of the parties as to the kind of engine sold and to be delivered to defendant; and that by the complete contract of the parties the defendant was to have a new and up-to-date engine, and that the plaintiff by its agent committed fraud upon defendant by palming off on him a different engine from the one agreed to be delivered to him, by the complete contract of the parties, and that defendant has paid plaintiff all that it is reasonably worth, then your verdict should be for the defendant."

The learned trial judge refused the following instruction asked by plaintiff:

"8. If the jury believe from the evidence that the engine in question was the consideration of the note, and was worth anything, and that the defendant has failed to give notice of its alleged defects in a reasonable time to the plaintiff or to return the same, then he is presumed to have acquiesced in the alleged defects, and is not entitled to any deduction from the amount of the note."

The foregoing declaration is substantially a copy of the first instruction for plaintiff in Barr v. Baker, 9 Mo. (1 Ed.), 840 (2 Ed.), 850, copied in the later

case of Brown v. Weldon, 99 Mo. 567. A most interesting and ingenious argument has been submitted here to demonstrate that the decisions cited amount to an approval of that declaration as applied to a case like this. But in weighing that argument it should be remembered that in the Barr decision the instruction was given for the plaintiff, the defendant prevailed in the circuit court, and plaintiff brought a writ of error in the Supreme Court where the judgment was affirmed. If the instruction, therefore, was more favorable to plaintiff in that case than strict law permitted, there was no occasion for the court to say so. We do not regard the ruling in the Barr case as decisive of the exception taken to the refusal of the eighth instruction in the case at bar. But another decision cited is more nearly in point. In Estes v. Reynolds, 75 Mo. 563, plaintiff sued for damages for fraud in the sale of bonds and was held disentitled to recover. He "did not notify defendant of his discovery" (to quote the statement of facts opening the report of that decision). The court held that he could not keep the benefit of the contract and repudiate its disadvantages.

Moreover, in American Ins. Co. v. Kuhlman, 6 Mo. App. (St. L.) 522, it was held that where a party claims to be injured by fraudulent representations he must "make his objections known within a reasonable time after his discovery of the alleged falsehood, and that he shall not leave the other contracting party to suppose the contract in full force while the objector continues to enjoy its benefits."

Yet, on the other hand, we find other decisions (some of them later) which announce and enforce the proposition that, where a sale of personalty has been induced by fraudulent misrepresentation, the injured party may stand by the bargain and may even execute it thereafter fully on his part, without prejudice to his right of action for the fraud, and, necessarily, without prejudice to his right to recoup for those damages in

an action for the price.   Jarrett v. Morton, 44 Mo. 275; Parker v. Marquis, 64 Mo. 38; Finlay v. Bryson, 84 Mo. 669; Nauman v. Oberle, 90 Mo. 667; Robinson v. Siple, 129 Mo. 208; Campbell v. Hoff, 129 Mo. 317; Moore v. Emerson, 63 Mo. App. (St. L.) 137; Edwards v. Noel, 88 Mo. App. (St. L.) 434.

In view of those positive rulings we must hold that the eighth instruction was properly refused in the case at bar.   If the entire agreement (as found by the jury) contemplated the delivery of a new engine, and by fraud on defendant's part an old one instead was imposed on plaintiff, he might recover damages for the fraud in diminution of the seller's demand for the price.   That right of recovery would not depend on his having given notice to defendant ''in a reasonable time,'' or returning the property.   A purchaser imposed on by fraud in the sale of an article may retain it and recoup his damages resulting from the fraud, when sued for the price.   Benjamin, Sales (2 Am. Ed.), sec. 452, note a; Brown v. Weldon, 99 Mo. 564, and the last group of cases above cited.

3.   The foregoing observations will suffice to dispose of another assignment of error on the refusal of an instruction (the eleventh) declaring, in substance, a waiver by defendant of his right to recoup on account of the quality of the engine if he failed to object thereto within a reasonable time after he received and used the engine.

4.   Exception was taken to the testimony of experts who examined the engine a long time after the sale and gave statements as witnesses for defendant concerning the physical facts they saw, from which it might be inferred that the machine was not a new one when delivered to defendant in August, 1896.   The facts they attested concerned the condition of the machine in particulars which tended to show its permanent construction when bought.   The lateness of their examination did not necessarily weaken or disqualify the testimony.

The facts they stated tended to show that the machine was not a new one at the time of the contract of sale, and we think their testimony was rightly admitted.

5.   In fine, we regard the merits of this appeal as concluded by the rulings on the last previous hearing in this court, and by the Missouri cases of the type of Nauman v. Oberle, 90 Mo. 669.   The findings by the trial court in regard to the true terms of the contract, to the delivery of an old for a new machine, and that defendant paid the full value of the delivered machine, leave little for review, considering the precedents which are binding authority in this court.

The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.