## CHAS. H. SMITH, Respondent, v. C. F. MEANS, Appellant.

Springfield Court of Appeals, April 7, 1913.

1. CONTRACTS: Breach of Warranty: Rescission of: When Permissible. To rescind a contract because of breach of warranty, it is not necessary to allege or show that the representations of the warranty were false and fraudlently made. It is sufficient that the warranty was made, that the party relied on the same in entering into the contract and that the warranty failed.

2. APPEAL: Reversal of Judgment: Only on Material Error. A judgment should not be reversed unless there is a material error affecting the merits of the action.

3. PLEADING: Petition Stating Several Causes: Election: When Not Necessary. Where a petition states facts which would entitle the plaintiff to recover damages for a breach of warranty, or for fraud and deceit, or for a rescission of the

contract and a return of the purchase price with damages, any error which occurred on account of the failure of the trial court to require plaintiff to make an election was cured by the instructions of the court which limited the cause of action to one for rescission.

4. SALE: Rescission by Purchaser: When Tender Not Necessary. In an action for rescission of a contract of sale, a tender of the article purchased is unnecessary where the person to whom it would be made has stated and shown that he would not accept it if made.

5. ———: Warranty: Article Useless: Tender Not Necessary. Where the thing which is the subject of a sale is worthless for any purpose, it need not be tendered and there need not be any offer to return same.

6. SALES: Rescission: Offer to Return: When Sufficient. Where the purchaser paid for an animal partly with cash and partly with other live stock, it was not necessary, in his offer to return the animal purchased "for value received," that he should enumerate each animal put in by him on the trade.

7. SALE: Consideration: Instructions. Where in the purchase of an animal part of the consideration paid was money and part live stock at an agreed cash valuation, and treated by both parties as the equivalent of cash, the evidence examined and *held*, that there is no merit in an assignment of error that the instructions ignored the fact that part of the consideration was live stock.

8. INSTRUCTIONS: Exception to Must be Saved. The appellate court will not consider a complaint concerning an instruction where no exception to the giving thereof has been saved.

9. ———: Refused Instruction Covered by Others: No Error. There is no error in the refusal to give a requested instruction, where the matter contained therein is amply stated in the instructions given by the court.

10. ———: Referring to Pleadings: Erroneous. An instruction which refers the jury to the pleadings is erroneous.

11. SALES: Warranty: Breach of: Statements Connected Therewith. Where an animal was purchased specially for breeding purposes, and the seller warranted him therefor, statements made at the time by the seller that the animal was young and unbroken, would not suffice to relieve the seller from liability on such warranty so as to prevent a recovery on rescission.

12. **VERDICT: Surplusage Stricken by Court.** Where a clause in a verdict was mere surplusage, in no way affecting the substantial rights of either party to the suit, it was proper that the court should call the jury's attention thereto and have it stricken out with their consent.

13. **CONTRACT: Rescission: Recovery: Title to Property Vests in Seller.** Where a contract is rescinded and the party injured recovers the full purchase price, the law vests the title to the property back in the seller.

Appeal from Jasper Circuit Court.    Division Number One.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*John H.* and *W. E. Bailey* and *J. D. Harris* for appellant.

(1) The court erred in not requiring plaintiff to elect on what theory he would try the case, either as an action for damages for fraud and deceit, or for rescission of contract, or for breach of warranty. Barnett v. Nolte, 55 Mo. App. 184; Bank v. Umrath, 42 Mo. App. 528. (2) The plaintiff must recover, if at all, on the cause of action stated in his petition. He cannot sue upon one cause of action and recover upon another. Wright v. Fonda, 44 Mo. App. 642. (3) The court erred in permitting the plaintiff to testify to facts tending to show a rescission of the contract for the cause of action alleged in the petition was for damages, not for rescission. There was no offer either in the petition, or at the trial for that matter, to place defendant *in statu quo.* There was no tender of the jack made by the petition nor was there an offer to receive back the chattels traded defendant. Estes v. Reynolds, 75 Mo. 563; Sturgis v. Whisler, 145 Mo. App. 155; Robinson v. Siple, 129 Mo. 208; 9 Cyc. 437. (4) But even if the petition stated a cause of action founded on rescission, that is not enough. The proof must show a tender. Sturgis v. Whisler, 145 Mo.

App. 155. (5) The instruction given for the plaintiff ignores the facts of the case, and predicates plaintiff's right to recover upon a false basis. The evidence showed an exchange of property, the plaintiff trading seven head of shoats, six valued at $6 each, and one at $7.50, two sows at $45, and one cow at $25, for the jack valued at $400, plaintiff paying the difference in money. The instruction ignores these facts and assumes that the transaction was a straight out sale of the jack to plaintiff for $400 in cash. This being contrary to all the evidence in the case, there was no evidence to base this instruction upon. Holden v. Railroad, 177 Mo. 469; McKeon v. Railroad, 42 Mo. 84. (6) Furthermore, the instruction ignored the question of fraud and deceit upon which plaintiff predicated his right to recover. This is reversible error. Sawyer v. Railroad, 37 Mo. 240; Phelan v. Paving Co., 115 Mo. App. 436. (7) This instruction directed a verdict and yet as given did not embrace the whole case, and for that reason was erroneous. Bolles v. Railroad, 134 Mo. App. 704. (8) The trial court committed reversible error in dictating to the jury the verdict to be returned in the case, and in amending the verdict of the jury as returned into court, and in refusing to send the jury back for further deliberation on a verdict in the case. 2 Graham & Waterman on New Trials, pages 362-3-4; Springs Co. v. Tool Co., 103 Mo. App. 109.

*Thomas & Hackney* for respondent.

(1) Where one purchases property for a particular object, which object is known to the seller, without any express warranty, an implied warranty will arise that the property was reasonably fit for the use for which it was intended; and if upon a reasonable trial it is ascertained that the property is unfit

for the purposes for which it was purchased, the purchaser may, on notice to the seller and the tender of the return of the property, rescind the contract of purchase and recover from the seller the purchase price. Skinner v. Glass Co., 103 Mo. App. 650; Armstrong v. Tobacco Co., 41 Mo. App. 254; Brewing Assn. v. McEnroe, 80 Mo. App. 429; Creasy v. Gray, 88 Mo. App. 454; Compton v. Parsons, 76 Mo. 455; Faust v. Koers, 111 Mo. App. 560. (2) Where a party manufactured and sold to another party a machine to be used for a particular purpose and the manufacturer is informed of the purpose for which the purchaser wanted it, there is an implied warranty that the machine will be reasonably fit for the purpose for which it was purchased. Boulware v. Manufacturing Co., 152 Mo. App. 567. (3) On a breach of warranty in the sale of a chattel, the vendee may either affirm the contract, retain the chattel and obtain damages, or he may rescind the contract, offer to return the chattel and either defend against a suit for the purchase price, or if it had been already paid sue for its return, and in the latter case a formal tender need not be pleaded or shown, if the facts pleaded and proof adduced show that one would have been unavailable. Tall v. Chapman, 66 Mo. App. 581; Warner v. O'Brien, 40 Mo. App. 483; Soap Co. v. Sayers, 55 Mo. App. 15-25. (4) It is immaterial that the jack was not tendered back at the place where secured, when the evidence shows that it would not have been accepted if so tendered. Woods v. Thompson, 114 Mo. App. 38; McManus v. Grocery Co., 16 Mo. App. 375; Harwood v. Diemer, 41 Mo. App. 51; Diechmann v. Diechmann, 49 Mo. 19. (5) There is no evidence in the record that the jack was of any value whatever, and this being the case, no tender of a return of this worthless animal was necessary. The property need not be returned by the rescinding party if it is shown to be worthless. Implement Co. v. Ellis, 125 Mo. App.

700; Schultz v. Chrisman, 6 Mo. App. 338. (6) The court commited no error, on the coming in of the verdict of the jury, in amending the verdict by striking out the words "the jack to be returned to the defendant" as this was not an action in equity to rescind the contract of sale, but it was an action to recover the purchase price paid, after the rescission by the respondent himself by notifying the appellant that the jack would not perform at all and by offering to return the jack to the appellant. By the rescission the jack became the property of the appellant and neither the jury nor the court had anything to do with the disposition of the jack. (7) Where a petition charges representation or positive and unequivocal affirmation by defendant as to the state and quality of the thing sold, on the faith of which plaintiff made the purchase and paid the consideration, the word "warrant" need not be set out, nor any other particular phraseology. Carter v. Black, 46 Mo. 384; Implement Co. v. Leonard, 40 Mo. App. 477; Young v. VanNatta, 113 Mo. App. 250; Brewing Assn. v. McEnroe, 80 Mo. App. 429; McLennon v. Siebel, 135 Mo. App. 264. (8) It was not necessary for plaintiff to charge that the representations were fraudulent or fraudulently made, and if so charged need not be proved. Carter v. Cole, 42 S. W. 369; Smithers v. Bircher, 2 Mo. App. 499; Yeater v. Hines, 24 Mo. App. 619.

STATEMENT.—This was a suit to recover the price of a jack sold by the defendant to the plaintiff. The plaintiff prevailed in the circuit court of Jasper county and the defendant has appealed. The plaintiff's petition is as follows (formal parts omitted):

"Plaintiff for cause of action against the defendant states that on or about the 8th day of January, 1912, he purchased from the defendant a jack for breeding purposes; that in the negotiations for such purchase the plaintiff informed the defendant that he

desired to purchase a jack which was a good foal-getter; that he desired to stand the jack for mares in Jasper county, Missouri, for the season of 1912 and subsequent seasons; that the defendant falsely and fraudulently represented to the plaintiff that the said jack that the plaintiff afterward purchased was a good server of mares and a good performer and foal-getter, and, when asked by plaintiff whether such jack would serve as many as thirty-five mares during a season, he answered 'yes' and said he would serve as many as fifty, and that the plaintiff, relying upon said representations as being true, and being deceived thereby, was induced to purchase said jack from defendant, paying therefor the sum of $400; that plaintiff took possession of said jack on said purchase early in January, 1912, and took good care of said jack and prepared him for the season of 1912 and had the promise of many farmers that they would secure the services of said jack from plaintiff; that said representations so made by the defendant were false; that said jack was not a good performer and good foal-getter, but in truth and in fact the said jack would not perform at all and refused at all times to serve mares brought to be bred to him and was and is utterly worthless and of no value whatever; that on discovering that the representations so made were false and that said jack was not a good performer and would not serve mares and was not a foal-getter the plaintiff tendered said jack to the said defendant and then and there rescinded the said contract of purchase and demanded of defendant the return of the purchase price so paid by him, but the defendant refused to accept the return of said jack and refused to repay to plaintiff the purchase price thereof and still refuses although the return thereof was duly demanded of defendant. Plaintiff further states that he was put to great expense in the care and preparation of said jack for service of mares during the season of 1912 and

lost the profits which he would have made on mares offered for service and promised to be offered for service to the further damage of the plaintiff in the sum of $250.

"*Wherefore* plaintiff prays judgment against the defendant for the sum of $400, the price of said jack, and the sum of $250, for damages sustained by him as aforesaid, aggregating the sum of $650, and costs of suit."

Defendant answered by a general denial.

The evidence offered by the plaintiff tends to support the allegations of the petition. The testimony as to the price paid for the jack being $400 is uncontroverted. The $400 was paid in the following manner: $286.50 in cash; shoats valued at $36; one shoat valued at $7.50; two sows valued at $45; and a cow valued at $25. It appears that the plaintiff, having disclosed to defendant the business in which he was about to engage, bought the jack from the defendant, who at that time represented to plaintiff that the jack was a good server of mares and a good performer and foal-getter, and there is evidence that he told plaintiff he had bred the jack to twelve or thirteen mares; that plaintiff took the jack to his farm which was several miles from defendant's farm, built a new pit and fence, and prepared to go into the breeding business; that he kept the jack at his place from some time in January until February 22d, at which time he tried him out on a young mare which was brought for service; that after attempting in a number of ways to induce the jack to serve the mare, he failed. It appears that plaintiff subsequently tried the jack on old mares and young mares, on some occasions with a halter and on others without the halter; that at times there would be several persons standing nearby and at other times they would all get out of sight and leave the jack and mare alone. It is shown that the jack was tried on a number of mares but utterly failed to

perform.   After several trials, plaintiff notified the
defendant, and the latter sent his son to assist the
plaintiff, but with the same unsuccessful result, and
on one occasion they worked with the jack all after-
noon and until after dark.   The plaintiff offered the
testimony of numerous witnesses who took mares to
be served and who saw the attempts made, and they
swore positively that the jack failed to cover the
mares.   Uncontroverted testimony was offered to the
effect that a jack that refuses to perform and to
cover mares is wholly worthless for any purpose.
Plaintiff's evidence shows that he treated the animal
well, was kind to him, and gave him every attention,
and that he used the proper methods in handling the
jack for the purpose of inducing him to perform.
The plaintiff then notified the defendant that the jack
would not perform and offered to return him as dis-
closed by the following questions and answers appear-
ing in the record:   "A.   I says, 'I will this morning
yet return you this jack.'

"Q.   What you said to him about what you wanted
down with the jack?   A.   I says, 'I will return him to
you for $400, what you let me have him for.   If you
leave him at my place you leave him at your risk.   I
will return this afternoon, tomorrow, or next day,
whichever will suit you best.   I will return that jack
for value received.   If I have to keep him or go any
further I will—'

"Mr. Harris:   We object.   This is not a suit for
rescission.   We ask that that be stricken out.

"The court:   Overruled.

"Q.   He refused to receive him back?   A.   Yes,
sir; said he wouldn't do anything.

"Q.   You don't claim any title or interest in the
jack now, do you?   A.   I certainly do not."

The defendant's evidence tends to prove that he
sold the animal as an unbroken young jack for $400,
and that he told the plaintiff the jack had been used

on only three mares; that he explained to plaintiff that he did not guarantee the jack, and that it was a young jack, and that he (the plaintiff) was an inexperienced man; that he would be taking the jack into a new barn and a new place and new pit, and that the jack had never served with a halter on; that he did not agree "to have him work." The defendant testified that, being a young jack and being taken to a new place, was not handled properly by the plaintiff in that plaintiff attempted at first to breed him on a cold day in February in a new pit and not on a bed of manure (the jack having been kept in a barn and bred by the defendant where he stood on a bed of manure); that he, the defendant had had experience with jacks, and that where a jack had become accustomed to breeding while standing on a floor covered with manure and litter, if taken to a new place and a new pit, the chances were against getting satisfactory results with the jack. There is also evidence by experts on jacks and those familiar with handling them to the effect that a jack is an animal easily disturbed and unless carefully and properly handled he will refuse to copulate.

The court, at plaintiff's request and over defendant's exception, gave the following instruction:

"The court instructs the jury that if you find from the preponderance or greater weight of the evidence that the plaintiff, during the negotiations with the defendant for the purchase of the jack mentioned by the witnesses, informed the defendant that he was desirous of purchasing a jack for breeding purposes and wanted a good performer and server of mares and that the defendant sold the said jack to the plaintiff for the sum of $400 and represented that the said jack was a good performer, then if you further find from the evidence that the jack sold to plaintiff was not a good performer and would not serve mares and was not a foal-getter then the plaintiff had a right

on discovering that said jack would not serve mares to rescind the contract of purchase and on offering to return the said jack to defendant, become entitled to demand and sue for the amount paid by plaintiff to defendant as the purchase price of said jack, and in addition thereto recover for the reasonable and necessary expense in the keeping and feeding of said jack up to the filing of this suit, and if you so find you will find the issues for the plaintiff and assess his damages at the sum paid by him as the purchase price and the amount necessarily expended by him in the keeping and feeding of said jack up to the bringing of this suit, not exceeding the sum of $650.''

''The court of its own motion gave the following instruction:

''The court instructs the jury that unless you find from the greater weight or preponderance of the evidence that the defendant represented to plaintiff that the jack in question was a good performer and further find from the evidence that said representation was false and untrue, and that said jack was not a good performer and would not serve mares under proper conditions and careful handling, and unless you further find from the evidence that the plaintiff, on discovering that said jack was not a good performer and would not serve mares, if you find such to be the facts, tendered the jack back to defendant, and offered to return the same to him, and rescinded the contract, you will find the issues for the defendant.''

The jury returned the following verdict:

''We, the jury, find the issues for the plaintiff and assess the damages at the sum of four hundred, one and no-100 dollars, the jack to be returned to the defendant.''

Whereupon, the court, before reading aloud the verdict, announced to the jury that he could not receive the verdict as returned, and, with their permis-

sion, would strike out the words, "the jack to be returned to the defendant." The court at the time stated to the jury: "You have nothing to do with the disposition of the jack." Defendant objected and excepted to the court's statement to the jury and to the court's request for the jury's permission to strike out that part of the verdict quoted by the court because such action on the part of the court amounted to the court directing a verdict not arrived at by the jury and because the court's action was prejudicial to defendant, and requested the court to send the jury back to the jury room for further deliberation. This objection was overruled and an exception saved. Thereupon the court struck out the words referred to, and after reading the verdict with those words omitted, asked the jury if that was their verdict. Numerous grounds of objection to this course were stated, but were overruled, and the jury, signifying their consent, the verdict, as amended, was filed with the clerk as the verdict in the cause.

## OPINION.

FARRINGTON, J. (after stating the facts).— Appellant's first contention is that "the court erred in not requiring plaintiff to elect on what theory he would try the case, either as an action for damages for fraud and deceit, or for rescission of contract, or for breach of warranty."

The petition in this case states facts which would entitle the plaintiff to recover damages for a breach of warranty, or for fraud and deceit, or for a rescission of the contract and a return of the purchase price with damages. It does state a good cause of action for the rescission of the contract based on a breach of an express warranty that the jack was a good server of mares, a good performer and a foal-getter. While it charges that the representations were false, and were

fraudulently made, so far as the breach of warranty is concerned and so far as the right to rescind the contract is concerned, it made no difference whether the statements were false, and fraudulently made. [Smithers v. Bircher, 2 Mo. App. 499; Yeater v. Hines, 24 Mo. App. 619.] If they were made and if plaintiff relied upon them in entering into the contract and if the jack failed to come up to the warranty, the plaintiff has a good cause of action for rescission. The petition in this case does state a good cause of action for rescission. When the defendant's request was made that the court require an election, although the court overruled it, counsel for plaintiff stated: "I elect to stand on my petition. I have set up facts which, if true, authorize a rescission and allege that he rescinded by tendering the property back." The testimony introduced by the plaintiff tended to show the making of the warranty, the failure of the thing sold to come up to the warranty, the fact that the jack was utterly worthless for any purpose, the plaintiff's demand on the defendant to take back the animal for the purchase price, and a refusal on the part of the defendant *to do anything*. The instructions given by the court limited the cause of action as one for rescission. Whatever error occurred by a failure to require plaintiff to make an election during the course of the examination of witnesses was cured by the instructions, and the error was therefore not prejudicial. Judgments are not to be reversed unless there is error materially affecting the merits of the action. Sec. 2082, and Sec. 1850, R. S. 1909; Mann v. Doerr, 222 Mo. 1, 15, 121 S. W. 86; and in the case last cited it was held that not only must the error originally affect the merits, but the same must not be waived or cured.

Appellant for his second contention argues that plaintiff cannot sue upon one cause of action and recover on another, but this is obviously not well taken

for the reason that the cause of action on which plaintiff recovered is stated in the petition.

Appellant contends that the trial court should not have admitted testimony to show a rescission for the reason that there was no offer in the petition nor at the trial to place the defendant *in statu quo,* The petition expressly alleges that a tender was made to the defendant and the facts contained in the statement herein show an offer to return the jack for the purchase price, the language of the plaintiff being as follows: "I will return him this afternoon, tomorrow, or next day, whichever will suit you best. I will return that jack for value received. Q. He refused to receive him back? A. Yes, sir; said he wouldn't do anything." Conceding for a moment that a tender was necessary, the statement of the defendant that "he wouldn't do anything" would have relieved the plaintiff from actually producing the jack. The law is that a tender is unnecessary where the person to whom it should be made has shown that he will refuse it if made. [Kingsland & Ferguson Co. v. St. Louis Iron Co., 29 Mo. App. l. c. 538, and cases cited; Laswell v. National Handle Co., 147 Mo. App. 497, 522, 126 S. W. 969; Deichmann v. Deichmann, 49 Mo. 107, 109.] Although the offer which the plaintiff made did not of itself amount to a tender of the jack, the defendant's conduct and declaration that "he wouldn't do anything" would certainly have made the actual tender an idle ceremony, which of course dispenses with a production of the thing offered. [38 Cyc. 134, 135.]

But the evidence in this case discloses a state of facts which rendered a tender wholly unnecessary, the proof being that a jack that will not cover mares is absolutely worthless for any purpose; and the uncontroverted testimony is that this jack did not cover a single mare although tried two or three times on each of twelve or thirteen mares. The cases hold that where the thing which is the subject of the sale is

worthless for any purpose, it need not be tendered and there need not be an offer to return. [Brown v. Weldon, 99 Mo. 564, 13 S. W. 342; Crenshaw v. Looker, 185 Mo. 375, 388, 84 S. W. 885; Sinnamon v. Moore, 161 Mo. App. 168, 142 S. W. 494.] For the reasons stated, the cases cited under appellant's third assignment of error are not applicable.

It is claimed that the plaintiff by not offering to take back the live stock which formed a part of the consideration moving from him in the trade wholly failed in his proof of rescission. This was not a lump sale, or trade; each animal or class of animals was taken at a fixed cash valuation. The stock had been turned over to the defendant at the time of the trade, some time prior to plaintiff's offer to return the jack. All the plaintiff could offer back was the animal he had received, which his testimony shows he was entirely willing to do; and when he stated that he would return the jack for value received, it was an offer, and an expression of willingness and of an intention on his part to place the defendant *in statu quo*. While it is true that plaintiff in the course of the conversation stated that he wanted his $400 back, both had previously treated the money and live stock as $400 when the trade was made—defendant in his testimony saying that he got $400. To require the plaintiff to say, "I want to take back my $286.50," and to likewise enumerate each animal that had been put in on the trade by him would be unreasonable and the defendant should not be permitted to escape on so trivial an omission—especially where they had each put a cash price on each animal or class of animals given by plaintiff as part of the purchase price of the jack.

What has been said sufficiently answers appellant's fifth assignment of error.

The sixth point is that the plaintiff continued to exercise dominion over the jack as his own property for breeding purposes and that consequently he can-

not maintain this suit for a rescission. This contention is not warranted by the evidence which shows that the first time plaintiff tried the jack was on February 22d (which defendant says was a bad day to stand a jack on account of there being some snow on the ground), and plaintiff would not have been justified in pronouncing the jack impotent on the first trial under such conditions. The record fails to disclose the date on which plaintiff's offer to return the jack was made and on which the defendant said "he wouldn't do anything." Besides, all the testimony is that the plaintiff did not use the jack at any time from the day of the jurchase to the time of the suit; never, at any time while he was in plaintiff's possession, did he perform a single act of service. There is no testimony that he used the jack at all after he had rescinded the contract.

For a seventh assignment of error appellant argues that the instruction given for the plaintiff ignores the facts in the case, namely, that a part of the consideration given by the plaintiff on the trade was live stock. There is no testimony whatever in the record showing that this was a lump trade; it all shows that plaintiff paid the defendant $400 partly in cash and partly in enumerated live stock at an agreed cash valuation and which was treated by both parties as an equivalent of cash. Defendant, when asked the question, says he got $400, showing that he treated the live stock as so much cash on the trade.

Appellant's complaint concerning the instruction given by the court of its own motion falls down entirely for the reason that no exception was saved. The instruction, however, properly declared the law for the guidance of the jury on the issues triable in the case.

Appellant complains of the refusal of the trial court to give its instruction numbered one. The matter contained in this instruction is found amply stated

in the instructions given by the court; hence no error intervened. In passing, however, it may be remarked that defendant's requested instruction was improper and erroneous in that it refers the jury to the pleadings. [Sinnamon v. Moore, supra.]

In disposing of appellant's tenth assignment of error it is sufficient to say that if the court had given the instruction which appellant insists should have been given, it would have been necessary for the plaintiff to have kept the jack in the same pit and used the same halter and stood him on the same pile of manure on which he had been accustomed to stand while in defendant's barn in order to properly test him. The law of the case is properly declared in the instructions given by the court.

Appellant's argument that plaintiff failed to show any fraud or deceit is answered by saying that such showing was not necessary under the theory on which the case was tried; and defendant's instructions 3 and 4 had no place in the record.

Defendant's fifth instruction was properly refused; it does not correctly declare the law. If the defendant represented that the jack was a good server of mares, a good performer and a foal-getter, and plaintiff relied upon those representations and bought the jack, if the jack failed to come up to the warranty, then whether the defendant did or did not make the statements to plaintiff that the jack was young and unbroken and had only served three mares and was not halter-broken, would not relieve the defendant from liability on his warranty so as to prevent a recovery on rescission.

Appellant for his thirteenth assignment of error contends that the court erred in telling the jury that the last clause of their verdict, namely, "the jack to be returned to the defendant," had no place in the verdict and striking it out with the jury's consent. The gist of this action was whether the plaintiff could

recover damages on a rescission. The jury having found that the plaintiff was entitled to damages and having assessed them, the requirement they put in their verdict was no more than the law requires where there is a rescission and the party injured recovers the full purchase price, for in such case the law vests the title to the property back in the seller. The redundant clause in the verdict in no way affected the substantial rights of the defendant, and being mere surplusage, it was the right and duty of the court to call the jury's attention to it in open court and have it stricken out with their consent.

We have considered at length the numerous assignments of error in appellant's brief, and have attempted in the opinion the double and somewhat difficult course of considering the assignments, *seriatim,* and yet keeping the report of the case within reasonable bounds. The case is quite simple and the verdict was manifestly for the right party. There are indeed few lawsuits which are vigorously contested into which there will not creep some error, but where the errors are inconsequential and do not prejudice the substantial rights of the unsuccessful litigant, it is the plain duty of the appellate court to brush aside such technical objections and hold that the trial judge led the parties to a righteous judgment. For the reasons herein appearing, the judgment is affirmed. All concur.