Albert J. LOWRY, Plaintiff-Appellant,

v.

NORTHWESTERN SAVINGS & LOAN ASSOCIATION and Ralph M. Keeney, Jr., Defendants-Respondents.

No. 37470.

Missouri Court of Appeals, St. Louis District, Division Two,

Oct. 12, 1976.

Lashly, Caruthers, Thies, Rava & Hamel, P. C., Thomas Cummings, Clayton, for plaintiff-appellant.

Schurr & Inman, Robert Inman, Joel F. Graziani, Clayton, for defendants-respondents.

McMILLIAN, Presiding Judge.

This is an appeal which challenges the propriety of the trial court's dissolution of its temporary restraining order and refusal to grant further injunctive relief with reference to a foreclosure sale of the Park Glen Echo apartment complex. We affirm with directions.

In 1962, respondent Northwestern Savings and Loan Association (hereinafter called Northwestern) issued loans on a series of twenty (20) separate notes secured by deeds of trust on twenty (20) parcels of land which comprise the Park Glen Echo apartment complex. Respondent Ralph Keeney is the trustee on the deeds of trust and is also the president of Northwestern. In 1969, the apartment complex was acquired by Donald Straub. Dr. George Newton subsequently purchased the complex and leased it back to Mr. Straub. Thomas Wilhite, vice-president of Ira E. Berry, Inc., was under contract to Straub to manage the properties. Plaintiff Albert Lowry is a California real estate educator and entrepreneur whose first contact with the property was in late 1974 when Straub approached him about taking a second mortgage on the property. The assignment of the mortgage was not consummated because of the default proceedings detailed below. Plaintiff presently claims title to the apartment complex pursuant to an unrecorded quit-claim deed conveyed to him by Newton subsequent to the filing of this lawsuit.

Mr. Wilhite sent a letter to Northwestern on January 15, 1975, informing Northwestern of the fact that he would be unable to make the January payment but assured it that he anticipated receipt of monies from Straub soon. Upon receipt of this letter, Northwestern conducted an investigation of

the apartment complex and found it to be in a state of disrepair. Having received no money or further communication from Wilhite, on February 10, 1975, Northwestern sent a letter to Newton, the record owner of the complex, in care of Ira E. Berry, Inc. This letter informed Newton that if the January and February payments plus late charges were not made prior to February 25, 1975, foreclosure proceedings would be commenced that day.

On February 24, 1975, Wilhite tendered to Keeney payment by check of the January installment plus late charges. Keeney refused to accept the check on the grounds that it was entirely too late. Wilhite and Keeney then discussed the possibility of whether Wilhite could get enough money together to also make the February payment at that time. Wilhite said that he did not know whether he could get the money, and Keeney said he did not know if Northwestern would accept it even if Wilhite could get it. Keeney then told Wilhite that Northwestern was going to foreclose. Two days later, Wilhite wrote a letter to Straub advising him that Northwestern intended to foreclose. Funds for the February payment were not forthcoming.

On March 19, 1975, Northwestern exercised its option to accelerate the maturity date of the loans and notice of foreclosure letters were sent to Adolph Investment Corporation, the original owner of the property and to George Newton in care of his attorney. Attached to the letters were lists of the publications for foreclosure and listings of the property in question along with affidavits of publication from the St. Louis Countian, a local legal newspaper. Donald Straub and Ira E. Berry, Inc., also received copies of these notice letters.

This lawsuit was commenced on April 22, 1975, when plaintiff Lowry filed his petition for a temporary restraining order to prohibit Northwestern and Keeney from furthering the foreclosure sale scheduled for that date. A temporary restraining order was granted. Plaintiff posted a $5,000 injunction bond. After a hearing on the merits on August 14, 1975, the temporary restraining order was dissolved, the request for permanent injunction was denied, and the court reserved jurisdiction to determine damages on the bond posted pursuant to the temporary restraining order. Plaintiff then perfected this appeal.

■ We are confronted initially by respondent's motion to dismiss the appeal on the ground of mootness. After dissolution of the temporary restraining order, the property was sold at auction. Respondents contend that we may not grant any effective relief to plaintiff even if we found in his favor. Respondents, however, overlook the fact that plaintiff's liability on the $5,000 injunction bond is dependent on the propriety of the issuance of the injunction, *Goad v. Mister Softee of the Mississippi Valley, Inc.,* 380 S.W.2d 493, 495 (Mo.App. 1964); *Waterman v. Waterman,* 210 S.W.2d 723, 726 (Mo.App.1948). Therefore, we must examine the merits of the case in order to ascertain whether the injunction was properly issued. *Adamick v. Ferguson-Florissant School District,* 483 S.W.2d 629, 631 (Mo.App.1972).

■ Plaintiff argues that Northwestern's attempt to exercise its option to accelerate the amounts due under the various notes and deeds of trust after tender of the amounts due, plus late charges, under the notes for the month of January and after a "rejection" by Keeney of an offer to tender "future" amounts due, was improper. Plaintiff's position is that Wilhite made a proper tender of the January payment and did not need to make a tender of the February payment since Keeney had taken the position that such a tender would be refused. The argument is unconvincing. As of February 24, 1975, both the January and February payments were overdue. Wilhite's tender of a check in the amount of the January installment was a wholly insufficient tender because a tender to be effective for any purpose must be for the full amount due including interest and costs, *City of St. Louis v. Senter Commission Co.,* 343 Mo. 1075, 124 S.W.2d 1180, 1184 (1938). Tender comprehends not only the readiness and willingness to pay, but also the ability

to do so, *Ewing v. Miller*, 335 S.W.2d 154, 158 (Mo.1960). Wilhite admitted that his offer to make the February payment was entirely hypothetical, conditioned upon his ability to secure money from Straub to make the payment. In addition, the trial judge properly concluded that Keeney's equivocal response to Wilhite's hypothetical offer did not create a situation in which tender of the February installment would have been a vain and idle gesture, *cf. Citizens State Bank of Nevada v. Wales*, 469 S.W.2d 750, 757–8 (Mo.App.1971); *Smith v. Means*, 170 Mo.App. 158, 155 S.W. 454, 457 (1913).

In his reply brief, plaintiff argues that Keeney's conduct at the February 24, 1975, meeting amounted to a waiver of Northwestern's objection to the sufficiency of the amount of the tender. While it is true that " . . . [a]n objection to a tender, to be available to a creditor, must be timely made, and the grounds of the objection specified, otherwise it is waived. . . . " *Capital City Motors, Inc. v. Thomas W. Garland, Inc.*, 363 S.W.2d 575, 579 (Mo.1962), Keeney's rejection of the tender of the check because it was entirely too late apparently referred only to the tender for the January payment. The check was not intended to be a tender of both the January and February payments. In fact, there never was a tender of the February payment.

Invocation of the acceleration provisions seems to have been proper in this case. In order to effectuate acceleration and render the entire debt due, the mortgagee must perform some affirmative, overt act evidencing his intention to take advantage of the acceleration provisions, *Spires v. Lawless*, 493 S.W.2d 65, 73 (Mo.App.1973). Respondents evidenced this intent by the letter of February 10 threatening foreclosure if the January and February payments were not made by February 25, by Keeney's express statement at the February 24 meeting of Northwestern's intent to foreclose and by Northwestern's assumption of management control of the apartment complex on February 25, 1975.

Plaintiff finally contends that Keeney's furtherance of the foreclosure proceedings was a breach of his fiduciary duty as trustee on the deed of trust. A trustee on a deed of trust must act with complete fairness toward both debtor and creditor, *Spires v. Edgar*, 513 S.W.2d 372, 378 (Mo. banc 1974). In the present case, plaintiff's argument that Keeney acted impartially in favor of respondents is not supported by the evidence. Keeney acted to protect the creditor since the January investigation disclosed the deteriorating condition of the apartment complex. In addition, at the time of foreclosure the debtor was clearly in default and the foreclosure proceedings were properly conducted.

The trial court properly dissolved the temporary restraining order and refused to grant permanent injunctive relief. The cause is remanded for a hearing on the assessment of damages on the injunction bond.

Judgment affirmed with directions.

STEWART and RENDLEN, JJ., concur.